## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**EUNICE FELICIANO and ELOY SANTIAGO,**

**Plaintiffs,**

v.                                          **Case No: 6:23-cv-1050-PGB-EJK**

**AVENTUS INSURANCE COMPANY,**

**Defendant.**

_____/

## ORDER

This cause comes before the Court on the following filings:

1.    Plaintiffs Eunice Feliciano and Eloy Santiago's ("**Plaintiffs**") Amended[1] Motion to Remand (Doc. 12) and Defendant's response thereto (Doc. 18); and

2.    Defendant Aventus Insurance Company's ("**Defendant**") Motion to Dismiss and Compel Appraisal (Doc. 7 ("**Motion to Dismis**s")) and Plaintiffs' response in opposition (Doc. 30).

---

[1]    The initial Motion to Remand (Doc. 10) was struck for failure to comply with the Court's Standing Order and Local Rule 3.01. (Doc. 11). And yet, the Court highlights that Plaintiffs' Amended Motion to Remand still fails to comply with Local Rule 3.01. (*See* Doc. 12). Again, Plaintiffs' Amended Motion to Remand does not contain a legal memorandum. (*See id.*). Further, Plaintiffs neither cite legal authority nor advance any statements of law to support their requested form of relief. *See* Local Rules 1.01(d)(10), 3.01(a). Alas, the Court will address whether remand is warranted.

Upon due consideration, Plaintiffs' Amended Motion to Remand is due to be denied and Defendant's Motion to Dismiss is due to be granted in part.

## I.  BACKGROUND

This case stems from an alleged breach of a homeowner's insurance policy contract. (Doc. 1-4 (the "**Complaint**")).

About a year ago, a hurricane allegedly resulted in Plaintiffs suffering a covered loss to their "property located at 506 Geraldine Dr, Deltona, FL 32725" (the "**Property**"). (*Id.* ¶ 4). Prior to filing this lawsuit, on March 31, 2023, Plaintiffs sent Defendant a pre-suit notice of an intent to initiate litigation that included a pre-suit settlement demand of $83,000, damages estimate of $100,000, and detailed repair estimate of $100,250.85. (Doc. 18, Ex. B (the "**NOI**")).

Initially, on April 24, 2023, Plaintiffs filed their Complaint in state court asserting a sole cause of action for breach of contract and damages "in excess of" $50,000. (Doc. 1-4). Defendant removed the case on June 5, 2023. (Doc. 1). Shortly thereafter, Defendant filed a Motion to Dismiss (Doc. 7) to which Plaintiffs did not timely respond. Then, on June 29, 2023, Plaintiffs filed their Amended Motion to Remand the action to state court (Doc. 12), and Defendant timely responded in opposition (Doc. 18). Ultimately, the case was reassigned to the undersigned (Docs. 26, 27), and the Court ordered Plaintiffs to show cause for their failure to respond to the Motion to Dismiss (Doc. 29 (the "**Order to Show Cause**")). Plaintiffs filed their response to the Order to Show Cause, which included

their response to the pending Motion to Dismiss. (Doc. 30).[2] Accordingly, the matters are now ripe for review.

## II.     STANDARDS OF REVIEW

### A.     Motion to Remand

28 U.S.C. § 1441(a) allows a defendant to remove a civil action from state court to federal district court where the basis for the underlying claim is federal question jurisdiction or diversity jurisdiction. *Hawkinson v. State Farm Mut. Auto. Ins. Co.*, 325 F. Supp. 3d 1293, 1296 (M.D. Fla. 2018).

Diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a). If the plaintiff does not plead a specific amount of damages, the removing defendant bears the burden of establishing that the jurisdictional threshold is met by a preponderance of the evidence. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208–09 (11th Cir. 2007); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam). Likewise, when a "plaintiff contests [a] defendant's [alleged] amount in controversy . . . the district court must find 'by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting 28 U.S.C. § 1446(c)(2)(B)). That said, "a removing defendant is not

---

[2]     Months after the Amended Motion to Remand was filed, Plaintiffs attempted to file a Reply to Defendant's Response to the Amended Motion to Remand. (Doc. 31 (the "**Reply**")). However, the Reply was struck for various reasons, largely for failure to comply with Local Rule 3.01(d) and Local Rule 3.01(g). (*See* Docs. 32, 33).

required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

Beyond the face of the complaint, a district court may consider the defendant's notice of removal and other relevant evidence submitted by the parties to determine the amount in controversy. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." *Lowery*, 483 F.3d at 1211.

### B.   Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain

4

detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III.   DISCUSSION

### A.   Remand

The crux of the parties' remand dispute surrounds the amount in controversy requirement for diversity jurisdiction. (Docs. 12, 18).[3] Plaintiffs' sole argument is that the amount in controversy does not exceed the requisite jurisdictional minimum of $75,000—and thus the case must be remanded—because the NOI states the "disputed amount" as exactly $75,000. (*See* Doc. 12, p. 1 ("The filing of the NOI as a prerequisite to filing the Complaint stating the disputed amount is $75,000.00 clearly precludes removal of this action.")).

---

[3]   Accordingly, the court tailors its discussion to the issue at hand. Nonetheless, considering the papers before it, the Court finds the parties' citizenship diverse.

Defendant, however, contends the "disputed amount" as listed on the NOI does not necessarily equate to the amount in controversy for jurisdictional purposes. (Doc. 18). Moreover, Defendant suggests that Plaintiffs' pre-suit settlement demand and accompanying damages estimate establish the requisite amount in controversy. (*See id.*). The Court agrees.

Essentially, Plaintiffs attempt to argue—albeit with zero reference to any supporting legal authority—that the "disputed amount" as listed on an NOI equals the amount in controversy. (Doc. 12).[4] As such, since the disputed amount is $75,000, Plaintiffs contend the amount in controversy is the same and does not exceed the jurisdictional minimum. (*See id.*). To the contrary, Defendant sets forth that the term "disputed amount" has its own definition specific to Florida Statute § 627.70152—and thus, is unrelated to the jurisdictional amount in controversy. (Doc. 18).

Pursuant to Florida Statute § 627.70152, an insured filing suit under a residential or commercial property insurance policy "must provide the department

---

[4]  Plaintiffs, again, fail to include any supporting legal authority or paper that "otherwise advances a statement of law to support a request for relief." *See* Local Rule 1.01(d)(10), 3.01(a). The Eleventh Circuit has made clear that courts "will not consider arguments raised 'in a perfunctory manner[ ] without supporting arguments and citation to authorities.'" *Sublett v. Landshark Grp., Inc.*, No. 20-CV-128-AW-GRJ, 2021 WL 11696269, at *1 (N.D. Fla. Apr. 12, 2021) (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *see, e.g.*, *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him."). As such, Plaintiffs failure to set forth any substantive reason that would cast doubt on the conclusion that the amount in controversy more likely than not exceeds $75,000 further supports the Court's conclusion that Defendant has met its burden in proving jurisdiction.

with written notice of intent to initiate litigation" that includes the "disputed amount." The disputed amount in an NOI is defined specifically as the "difference between the claimant's pre[-]suit settlement demand, not including attorney fees and costs listed in the demand, and the insurer's pre[-]suit settlement offer, not including attorney fees and costs, if part of the offer." FLA. STAT. § 627.70152. Thus, the difference between the pre-suit settlement demand of $83,000, and attorney's fees and costs, which add up to $8,000, equates to $75,000. (*See* Doc. 18, Ex. A). Moreover, the NOI must also include "an estimate of damages," which is listed as $100,000. (*See id.*). As such, considering the language of the statute, the Court agrees with Defendant—the term "disputed amount" on an NOI carries a distinct meaning and thus, does not fix—nor does it really correlate to—the amount in controversy for purposes of *jurisdiction*. (*See* Doc. 18, pp. 1–3).

Irrespective of the disagreement surrounding the meaning of "disputed amount" and its relevance, Defendant suggests that the pre-suit settlement demand, along with the detailed damages estimate, sufficiently establishes the requisite amount in controversy. (*Id.* at pp. 2–3).[5] The Court agrees.

Although settlement offers "count[] for something," they "do not automatically establish the amount in controversy for purposes of diversity

---

[5]   Considering the pre-suit settlement demand and damages estimate are sufficient to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, the Court need not address the issue of whether attorney's fees should be included in determining the amount in controversy.

jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, No. 10-CV-615-J-32JRK, 2010 WL 6790539, at \*2 (M.D. Fla. Nov. 5, 2010). In order to sufficiently establish the amount in controversy, a settlement demand must provide an honest assessment of damages, with specific information to support a plaintiff's request, rather than simply "reflect [mere] puffing and posturing." *E.g.*, *Lamb*, 2010 WL 6790539, at \*2; *see Collazo v. Progressive Select Ins. Co.*, No. 20-25302-CIV, 2021 WL 81666, at \*3 (S.D. Fla. Jan. 11, 2021) ("Courts have held that a removing party may rely on a pre-suit demand to satisfy the jurisdictional amount if (1) 'the document reflects an honest assessment of damages,' and (2) the plaintiff 'does not contest the veracity of the information contained in the document despite having an opportunity to do so.'" (quoting *Perez-Malo v. First Liberty Ins. Corp.*, 2017 WL 7731958, at \*3 (S.D. Fla. June 8, 2017)).

Here, Plaintiffs made a pre-suit settlement demand of $83,000—or 75,000$, excluding attorney's fees and costs accounted for pursuant to Florida Statute § 627.70152.[6] In addition, on the NOI, Plaintiffs estimated damages at $100,000. In support of their request, Plaintiffs attached a highly detailed estimate to repair the damages, which amounted to a total of $100, 250.85. (Doc. 18, Ex. B). The estimate spanned sixty-five pages, including an itemized list of costs associated with each individual area of the home that suffered damage and/or needed repair. (*Id.*). Moreover, each cost had an associated description that

---

[6]   *See supra* note 5.

indicated what the price amounted to in labor, material, and so forth. (*Id.*). As such, the Court finds that the demand and accompanying estimate to repair the insured property "contain[] specific and corroborating evidence reflecting an honest assessment of damages." *Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1273 (S.D. Fla. 2020) ("Detailed public adjuster estimates that delineate corroborating evidence of the damages can provide a firm basis for removal."); *see Perez-Malo*, 2017 WL 7731958, at *3 (finding that Defendant met its burden of establishing the amount in controversy because "the repair estimate provide[d] 'itemized' and highly detailed repair costs and arrive[d] at a specific sum ($112,341.91) well above the jurisdictional threshold"). Accordingly, the repair estimate alone establishes by a preponderance that the amount in controversy exceeds $75,000.

In any event, courts can employ their "judicial experience and make reasonable inferences and deductions to determine the amount in controversy." *Roach v. Hosp. Ventures Mgmt., LLC*, No. 22-CV-62188-RAR, 2023 WL 1430476, at *3 (S.D. Fla. Jan. 31, 2023) (quoting *Stern*, 424 F. Supp. 3d at 1269); *see Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014). Considering the pre-suit settlement demand, disputed amount, and repair estimate in tandem, the Court's common sense and judicial experience support a determination that the *amount in controversy* surely exceeds $75,000. (Doc. 18, Ex. B); *e.g.*, *Stern*, 424 F. Supp. 3d at 1269; *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010);

*Dewitte v. Foremost Ins. Co.*, 171 F. Supp. 3d 1288, 1289 (M.D. Fla. 2016). Thus, Plaintiffs' request for remand is denied.

### B.   Motion to Dismiss and Compel Appraisal

Considering Plaintiffs request for remand is denied, the Court must address Defendant's Motion to Dismiss and Compel Appraisal. (Doc. 7). Therein, Defendant contends that it demanded appraisal of Plaintiffs' claim pursuant to the subject insurance policy, and thus, the Court should compel appraisal, stay the litigation, and ultimately dismiss the case with prejudice. (*Id.*). In opposition, Plaintiffs simply iterate their understanding of an insurer's duties regarding appraisal under Florida Statute § 627.70152—yet again, citing no legal authority and failing to advance any statement of law to support their position. (Doc. 30). As such, Defendant's request is practically unopposed. Further, without contravening legal authority, Defendant's argument is more compelling.

Essentially, Defendant argues that the subject insurance policy included an appraisal provision that stated, "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss." (Doc. 7, Ex. D).[7] Considering the

---

[7] The Court notes that Plaintiffs' contention that Defendant's "motion to dismiss is plead as a motion for summary judgment attempting to attach exhibits which have no bearing to the Complaint" is wholly misguided. (Doc. 30, p. 2). Courts "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Here, the insurance policy itself is unequivocally central to a suit that involves breach of the respective contract. Moreover, Plaintiffs' do not seem to dispute the authenticity of any of the attachments to the Motion to Dismiss. In fact, Plaintiffs relied on one of the same exhibits—the claims letter from Wellington—in its Response to Defendant's Motion to Dismiss. (Doc. 30-1).

parties agreed there was a covered loss, but failed to agree as to the amount, Defendant demanded appraisal under the insurance policy. (Doc. 7, pp. 2–3; Doc. 30-1). At the time, however, Defendant also responded with an offer for settlement. (Doc. 30, pp. 2–4; Doc. 30-1). Plaintiffs contend that "the request for appraisal was made improperly" because Florida Statute § 627.70152(4)(b) provides that an insurer must respond "by making a settlement offer *or* requiring the claimant to participate in appraisal or another method of alternative dispute resolution." FLA. STAT. § 627.70152(4)(b) (emphasis added). Plaintiffs argue—albeit without legal support—that the "statute clearly states that the insurer must either make an offer or require the claimant to participate in appraisal." (Doc. 30, pp. 2–4). Thus, because Defendant provided both, the request for appraisal was not valid. (*Id.*). Without more, the Court simply disagrees.

Here, the subject insurance policy included the following appraisal provision:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
> 1. Pay its own appraiser; and
> 2. Bear the other expenses of the appraisal and umpire equally.

(Doc. 7, Ex. A). Both parties in this case appear to agree there was a covered loss. As such, Defendant demanded appraisal pursuant to the aforementioned provision in the insurance policy. (Doc. 7, pp. 2–3; Doc. 30-1). Accordingly, when an insurer "admits that there is a covered loss [under an insurance policy with an appraisal clause], but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid." *Anoushfar v. Lexington Ins. Co.*, No. 21-11244, 2021 WL 4848073, at *4 (11th Cir. Oct. 18, 2021) *(*quoting *Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021, 1025 (Fla. 2002)).

Florida law prefers "[e]nforcing appraisal provisions . . . over lawsuits as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits." *Pantoja v. Am. Sec. Ins. Co.*, No. 20-21069-CIV, 2020 WL 2732346, at *1 (S.D. Fla. May 26, 2020) (citing *Calderon v. Scottsdale Ins. Co.*, No. 19-21012, 2019 WL 4954790 at *1 (S.D. Fla. Oct. 7, 2019)); *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011). As such, "motions to compel appraisal should be granted whenever the parties have agreed to the provision." *E.g.*, *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, No. 16-CV-1163-T-17MAP, 2016 WL 9526569, at *2 (M.D. Fla. July 29, 2016). Considering the parties agreed to the aforementioned appraisal provision, Defendant elected to invoke appraisal, and public policy favors enforcing appraisal provisions, the Court finds it appropriate to grant Defendant's request to compel appraisal.

Defendant also requests the Court stay proceedings pending the appraisal process and ultimately, dismiss the case with prejudice. At this stage, the Court finds that Defendant's request to stay the proceedings pending appraisal is warranted. *See, e.g.*, *Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 21-CV-178, 2022 WL 1085541, at *1 (M.D. Fla. Jan. 26, 2022) ("[A] stay is appropriate as appraisal might resolve the parties' dispute."), *report and recommendation adopted*, No. 21-CV-178, 2022 WL 714808 (M.D. Fla. Mar. 10, 2022); *Ho v. Clear Blue Ins. Co.*, No. 23-CV-1766, 2023 WL 6621049, at *1 (M.D. Fla. Oct. 11, 2023) ("Since the parties' dispute concerns the amount of loss, not coverage, a stay of litigation is appropriate to allow the parties to proceed with appraisal . . . .").

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows**:**

1. Plaintiffs' Amended Motion to Remand (Doc. 12) is **DENIED**;

2. Defendant's Motion to Dismiss and Compel Appraisal (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**;[8]

3. The parties shall expeditiously proceed with appraisal pursuant to the terms and conditions of the subject insurance policy to determine the amount of loss at issue.

---

[8] To the extent Defendant requests the Court dismiss the litigation with prejudice, such a request is denied at this time.

4.   Further, Plaintiffs shall name their appraiser **on or before December 27, 2023**. Within **fifteen (15) days** of being selected, the appraisers must choose an umpire. If the appraisers cannot agree on the selection of an umpire, the Court reserves jurisdiction to appoint an umpire, upon motion of the parties.

5.   The case is hereby **STAYED** pending completion of the appraisal process.

6.   The parties shall provide joint status reports every sixty (60) days hereafter and shall notify the Court upon completion of the appraisal process.

7.   Failure to comply with this Order may result in the dismissal of the case without further notice or other appropriate sanctions.

**DONE AND ORDERED** in Orlando, Florida on December 15, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties